UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WP COMPANY LLC<br>d/b/a THE WASHINGTON POST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-1487 (TNM) |
| | ) | |
| UNITED STATES DEPARTMENT OF<br>HOMELAND SECURITY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
TO AMEND THE AUGUST 18, 2020 SCHEDULING ORDER**

Defendant U.S. Department of State ("State Department"), by and through undersigned counsel, respectfully opposes in part Plaintiff's October 16, 2020 Motion to Amend the Court's Scheduling Order ("Motion"). *See* ECF No. 17. In short, the State Department respectfully requests that the Court deny the Motion because notwithstanding the other pressing responsibilities and the severe limitations the State Department and other parts of the Executive Branch continue to face as a result of the COVID-19 pandemic, the State Department produced two pages to Plaintiff on October 15, 2020, as required by the Court's August 18, 2020 Order. ECF No. 15. The Court previously denied Plaintiff's request for the State Department to make rolling releases, *id.* at 3, and Plaintiff's Motion fails to identify any sound basis for reconsidering that ruling now and requiring the Department to make its second production of responsive, non-exempt material any earlier than November 16, 2020, as the State Department proposed in the September 30, 2020 Joint Status Report. *See* ECF No. 16.

The State Department has and will continue to make good faith efforts to process material for release consistent with its other responsibilities—including court orders in other cases—and

COVID-19-related constraints.  As described in the Declaration of Eric F. Stein submitted in August, the State Department aspired to process 300 pages of records for this case on or before October 15, 2020.  *See* Declaration of Eric F. Stein, ¶ 49 [ECF No. 13-1] ("Stein Decl.").  Since beginning processing, the State Department has eliminated 105 pages of records from the original set of records as duplicative or non-responsive, and it is working on 460 pages of responsive and non-duplicative records.  As of the filing of this response to Plaintiff's Motion, the State Department has released two pages and has 458 pages at various stages of clearance by multiple external Executive Branch entities.  Some records will take longer to release because they require clearances by multiple entities.

Although the State Department had hoped to receive responses on the consultations and be able to produce more than two pages on October 15, 2020, a significant portion of its planned production did not receive the necessary external clearances in time.  Due to the subject matter of the requested information, which involves government spending at properties owned by President Trump, all of the responsive records in this case require external consultation with Executive Branch components, and some require multiple such consultations.  *See* 22 C.F.R. § 171.11(m). The State Department should be afforded reasonable time to follow its procedures, particularly because information about costs may be comingled with other sensitive information, including law enforcement techniques or procedures and names of government employees, such that careful attention to detail and context are crucial prior to release because a release under the FOIA is a release to all.  *See New York Times Co. v. U.S. Secret Service*, Civ. A. No. 17-1885, 2018 WL 722420, *2 (S.D.N.Y. Feb. 5, 2018) (recognizing that certain cost information can reveal the number of Secret Service staff traveling on an air-plane in connection with a protective detail and finding this information falls within the law enforcement guidelines that Exemption 7(E) is

intended to protect); *cf. Food Marketing Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019) ("FOIA expressly recognizes that 'important interests [are] served by [its] exemptions,' [], and "[t]hose exemptions are as much a part of [FOIA's] purpose[s and policies] as the [statute's disclosure] requirement.") (citations omitted).

Under these circumstances, where timing is the issue, the Court's role is to vindicate the statute by striking a balance between Plaintiff's right to receive information about government activity and the government's legitimate need to safeguard information exempt from disclosure. *See ACLU v. Dep't of Defense*, 339 F. Supp. 2d 501, 504 (D.D.C. 2004).  Rushing the process increases the chances of mistakes that cannot be undone if the error discloses information that should have been withheld.  As of the filing of this Opposition, the State Department has already sent out all of the records at issue in the case for necessary external consultations and taken reasonable steps to separate records requiring fewer consultations from others to avoid having records requiring more review hold up the release of other records.  If any records receive final clearance for release by October 30, 2020, the Department will release them to Plaintiff on that date, but the State Department is unable to commit to a specific volume for release.  It remains possible that the State Department will not have any additional records to release in this case on October 30, 2020, but the Department remains committed to its good faith efforts to release as many records as possible as quickly as practicable.

Plaintiff has publicly accused the State Department of bad faith in its processing of the records at issue in this case.  David A. Fahrenthold, *et al*., *State Department signals it will keep most details of its spending at Trump's properties hidden until after election*, Washington Post, (Oct. 16, 2020), *available at* https://www.washingtonpost.com/politics/state-department-signals-it-will-keep-most-details-of-its-spending-at-trumps-properties-hidden-until-after-

election/2020/10/16/83372f30-0f21-11eb-8074-0e943a91bf08_story.html.  Plaintiff has claimed that the Department said it would "try to release up to 300 pages" of records by October 15.  But as a sophisticated FOIA requester, Plaintiff surely appreciates the distinction between an aspiration to *process* a certain volume of pages and a promise to *produce* that same volume.  Indeed, even as Plaintiff has questioned the State Department's motives in its published reporting, Plaintiff's Motion recognizes that the Department has complied with the Court's August 18, 2020 Order and instead asks the Court to expedite the production schedule in this case because of the heightened public interest in government payments made to properties owned by President Trump.

But the Department cannot reallocate resources from one case to another merely because a plaintiff believes there is a greater public interest in the records sought than those at issue in other cases.  Indeed, many plaintiffs likely consider their requests to be of significant public interest and many of the requests in currently litigation relate to matters related in some degree to the election.  Courts typically do not recognize the identity of the FOIA requester as a relevant factor in any analysis, *Stonehill v. Internal Rev. Serv.*, 558 F.3d 534, 538-39 (D.C. Cir. 2009), and the statute affords no FOIA requester priority over another depending on the subject or the date of an agency's receipt of the request.  While the State Department works diligently to process and produce records in all of its ongoing litigations and in response to thousands of other FOIA requests it has received during the last few years (Stein Decl. ¶¶ 36-40), its resources are limited, and special treatment for one litigant necessarily prejudices other litigants as well as other FOIA requesters who have not sought relief in court.  The State Department's resources are particularly strained due to the ongoing effects of the COVID-19 pandemic, and the State Department has already taken all of the steps it can to process the records Plaintiff seeks in this case.  Indeed, Government-wide staffing constraints during the COVID-19 pandemic have created serious processing challenges, including

difficulties in obtaining necessary clearances from other Department components and other Executive Branch components, and the Department does not release documents in FOIA until it receives clearances from those components with equities in the information in those documents. *See* Stein Decl. ¶¶ 6, 12-13.  Despite these challenges, the Department has complied with both the letter and spirit of its representations to this Court to make a good-faith effort to process 300 pages by October 15, 2020, and indeed made its first production on schedule that afternoon.

Plaintiff's Motion does not attempt to satisfy the criteria for issuing a preliminary injunction, an extraordinary remedy not typically awarded in FOIA cases even when the records sought relate to an important subject of imminent public debate. *See e.g.*, *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 2d 32 (D.D.C. 2014) (denying a request for preliminary injunction to release records about the government's surreptitious collection of communications information by a date certain); *but see Wash. Post v. U.S. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61 (D.D.C. 2006) (granting a preliminary injunction where the records concerned White House visitor logs and where midterm elections were occurring shortly).  As such, denying Plaintiff's undeveloped request in its Motion is well within the Court's discretion.  *See Raines v. Dep't of Justice*, 424 F. Supp. 2d 60, 66 n.3 (D.D.C. 2006) (noting that it is not the obligation of the court to research and construct legal arguments open to parties, especially when they are represented by counsel); *see also Schmidt v. U.S.*, 749 F.3d 1064, 1069-70 (D.C. Cir. 2014) (district courts generally do not abuse their discretion by denying relief not properly requested by a party under the governing rule of civil procedure).

If the Court considers more than Plaintiff's outrage that the State Department's efforts to date have yielded only two pages, Plaintiff's plea should be rejected.  Of the criteria required for preliminary injunctive relief, Plaintiff falls shortest on the irreparable harm element in this case.

Indeed, given the voluminous reporting on the subject matter of the records at issue in this case, Plaintiff has failed to articulate why the failure to receive additional records would cause irreparable harm. Further, on likelihood of success on the merits, the question is not whether Plaintiff is entitled to a final response to its FOIA request but rather whether Plaintiff is entitled to expedited processing.  Plaintiff's Motion argues essentially that the value of the information lies in Plaintiff's ability to inform the public prior to the election in November.  The State Department recognizes that the requested information, dating back to 2017, may become stale or of lesser value other than historical after the election, but Plaintiff waited until five months before the election to initiate this litigation when the State Department's FOIA resources were significantly diminished due to the pandemic.  *See* Stein Decl. ¶¶ 47-50.  Plaintiff has generally sought faster processing by the State Department throughout the litigation, but the Court has not imposed any release volumes in this case to date despite the approaching election.

The balance of harms posed by the hardship attendant to disrupting the State Department's and other Executive Branch entities' orderly processing under extraordinary circumstances, on the one hand, compared to the speculative public benefit attendant to the release of additional information about payments made to properties owned by President Trump prior to the election on the other, weighs in favor of allowing the agencies to continue processing without interference. *See The Nation Magazine v. Dep't of State*, 805 F. Supp. 68, 74 (D.D.C. 1992) (denying a request for a preliminary injunction because expediting a FOIA request over other pending requests "would severely jeopardize the public's interest in an orderly, fair, and efficient administration of [ ] FOIA").

For all these reasons and based on the entire record in this case, the State Department respectfully requests that the Court deny Plaintiff's Motion to amend the August 18, 2020 Order, and allow the State Department to release any additional records that may be ready for release in the ordinary course by October 30, 2020.

Dated: October 22, 2020.

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

DANIEL F. VAN HORN, D.C. Bar # 924092
Chief, Civil Division


By:  /s/ *Jane M. Lyons*
JANE M. LYONS, D.C. Bar #451737
Assistant United States Attorney
555 4th Street, N.W. – Room E4816
Washington, D.C. 20530
Tel: (202) 252-2540
E-mail: Jane.Lyons@usdoj.gov

*Counsel for Defendants*