UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WP COMPANY LLC**<br>**d/b/a THE WASHINGTON POST**,<br><br>    Plaintiff,<br><br>  v.<br><br>**U.S. DEPARTMENT OF**<br>**HOMELAND SECURITY, et al.,**<br><br>    Defendants. | Case No. 1:20-cv-1487-TNM |

## PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E), and Rule 54(d) of the Federal Rules of Civil Procedure, Plaintiff WP Company LLC d/b/a The Washington Post (the "Plaintiff" or the "*Post*"), hereby requests that the Court enter an Order declaring defendants U.S. Department of Homeland Security ("DHS") and U.S. Department of State (the "State Department") liable for the Plaintiff's reasonable attorneys' fees and costs in this matter.

### PRELIMINARY STATEMENT

By securing the release of the records wrongly withheld under FOIA in this case, Plaintiff has vindicated the public's right to know about and monitor payments made by DHS and the State Department to businesses owned by then-president Trump and his family, including the Trump Organization. The requested information directly and significantly advances the public's interest in understanding how much American taxpayer money was used by then-President Trump and his family to house the officials and agents who accompanied and protected them during their travels.

Only by initiating this litigation, Plaintiff was able to obtain several judicial orders

requiring Defendants to produce records responsive to the FOIA requests by dates certain. *See* Aug. 18, 2020 Order, Dkt. 15 (directing the State Department to "make an initial production of responsive records by October 15, 2020"); Oct. 1, 2020 Minute Order (directing the State Department to "make a second production on or before November 16, 2020"); Dec. 1, 2020 Minute Order (directing the State Department to "make another production on or before December 14, 2020"); Jan. 4, 2021 Minute Order (directing the State Department to "make another production on or before February 15, 2021"). This outcome indisputably warrants an award of fees and costs to Plaintiff under the two-step analysis followed in this Circuit, in which the Court first assesses "eligibility" and then "entitlement" to fees and costs. Plaintiff is <u>eligible</u> for a fee award because it has substantially prevailed by successfully obtaining judicial orders for the total release of the records sought, which Defendants unreasonably refused to produce. Plaintiff is also <u>entitled</u> to recover its fees and costs because, as a news organization receiving no commercial benefit for its efforts, Plaintiff seeks to disseminate and report to the public on the security payments made with taxpayer dollars to businesses controlled by the then-President and monitor the government's spending during the Trump presidency. Moreover, Plaintiff's fee request is reasonable, reflecting, in the two years this lawsuit has been pending, just 168.70 hours of work by attorneys and paralegals and the ordinary costs of filing fees and related expenses.

For the reasons below, Plaintiff respectfully requests that the Court enter an order declaring that the Defendants are jointly liable to Plaintiff for an award of reasonable attorneys' fees in the amount of $91,290.60 and costs in the amount of $840.55.

## FACTUAL AND PROCEDURAL BACKGROUND

The *Post* brought this suit against DHS and the State Department for their constructive denials of nineteen FOIA requests, each requesting information about security expenses for

specific trips or locations the Trump family visited while then-President Trump was in office. Between September 11, 2018 and March 6, 2020 the Plaintiff submitted eleven FOIA requests to DHS for records relating to payments that the Secret Service has made to the Trump Organization and related entities for specific trips or properties. Compl. ¶ 19, Dkt. 1. In February 2020, the *Post* made eight FOIA requests to the State Department seeking records relating to payments that the State Department has made to the Trump Organization or related entities with each request limited to specific properties. *Id.* ¶ 34. DHS failed to respond to the requests at all, and the State Department failed to produce a single responsive record within the time period prescribed by law or at any time prior to the filing of this lawsuit. *Id.* ¶¶ 31-33, 43-45. Each of the *Post's* nineteen FOIA requests narrowly described the documents sought. On June 5, 2020, Plaintiff filed the Complaint in this action, challenging the DHS and the State Department's constructive denial of the nineteen requests, seeking declaratory and injunctive relief.

The State Department and DHS jointly filed their Answer on July 8, 2020, in which DHS admitted that "DHS has not asserted the scope of the records that will be produced and the statutory deadline for the DHS's initial determination has passed." Answer ¶ 32, Dkt. 11. The Court then ordered the parties to file a joint status report and proposed briefing schedule. Minute Order, July 8, 2020. The Court subsequently directed the State Department to make rolling productions of responsive records by the following dates: October 15, 2020, November 16. 2020, December 14, 2020, February 15, 2021. *See* Order, Aug. 18, 2020; Minute Order, Nov. 1, 2020; Minute Order, Dec. 1, 2020; Minute Order, Jan. 4, 2021.

Plaintiff filed an Amended Complaint on February 22, 2021, Dkt. 27 Defendants then filed an Answer to the Amended Complaint on March 24, 2021, Dkt. 30.

Pursuant to Rule 54(d)(2)(B)(i) and 5 U.S.C. § 552(a)(4)(E), Plaintiff now timely moves for an award of their attorneys' fees and costs in this matter.

## ARGUMENT

This is a quintessential case for awarding attorneys' fees and costs under FOIA. The *Post*, a national news organization, requested spending records for the specific purpose of disseminating and reporting to the public on a matter of obvious public concern – the payment of taxpayer dollars to business interests controlled by the President; the State Department and DHS withheld the records under FOIA; and, as the result of this suit, the State Department and DHS released public records. In these circumstances, the basis for an award of attorneys' fees and costs is beyond dispute.

**I.     PLAINTIFF IS ELIGIBLE FOR AND ENTITLED TO FEES AND COSTS.**

The FOIA statute provides that the Court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under [FOIA] in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). To determine whether to issue such an award, the D.C. Circuit has established a two-step test, first assessing "eligibility" and then "entitlement" to fees. *See, e.g.*, *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 524 (D.C. Cir. 2011) ("The eligibility prong asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees. If so, the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff should receive fees.") (citation omitted). Plaintiff satisfies both prongs here, and the Court should accordingly find the Defendants liable to the *Post* for its reasonable attorneys' fees and costs.

**A.     Plaintiff Is Eligible To Recover Reasonable Attorneys' Fees And Costs.**

The *Post* is "eligible" for a fee award on the face of the FOIA statute itself. A FOIA

4

plaintiff is eligible for a fee award if it has "substantially prevailed" in the litigation, which the law defines as obtaining some relief through "a judicial order, or an enforceable written agreement or consent decree," or "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii).  Here, the State Department refused to produce any documents responsive to the FOIA requests, and, as a direct result from this lawsuit, the State Department was ordered to make rolling productions.  Similarly, DHS elected to produce records only after the lawsuit was filed.  Because the *Post* obtained the complete judicial relief they pursued in this case, it has substantially prevailed and is eligible for an award of its reasonable attorneys' fees and costs.

### B.     Plaintiff Is Entitled To Recover Reasonable Attorneys' Fees And Costs.

The *Post* is also clearly "entitled" to recover its attorneys' fees and costs.  The D.C. Circuit considers four non-exclusive factors to determine fee entitlement: "(1) the public benefit derived from the case, (2) the commercial benefit to the requester, (3) the nature of the requester's interest in the information, and (4) the reasonableness of the agency's conduct." *Morley v. CIA*, 719 F.3d 689, 690 (D.C. Cir. 2013) (per curiam).[1]  "Balancing these factors is a matter for the district court." *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 371 (D.C. Cir. 2008).  In this case, all four factors weigh in the *Post's* favor.

**Public Benefit:**  The public will clearly benefit from the *Post's* success in obtaining these

---

[1] Then-Judge Kavanaugh, concurring in *Morley*, argued that "[w]e should ditch the four-factor standard" because it does not appear in the FOIA statute and was apparently considered and rejected by Congress.  719 F.3d at 690-91 (Kavanaugh, J., concurring).  Judge Kavanaugh advocated instead for the rule that applies in civil rights cases:  prevailing plaintiffs should receive attorneys' fees "with only a very narrow exception for 'special circumstances' such as bad faith by a prevailing plaintiff." *Id.* at 692.  The *Post* agrees this should be the standard and that the four-factor standard improperly limits the broad fee-shifting provision that Congress enacted.  Under either standard, however, Plaintiff would prevail.

records.  A FOIA requester's success meets the public benefit threshold when it "is likely to add to the fund of public information that citizens may use in making vital political choices."  *EPIC v. NSA*, 87 F. Supp. 3d 223, 234 (D.D.C. 2015) (citation and internal marks omitted); *see also Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008) (holding that a public benefit is significant where the "FOIA request and subsequent litigation were intended to compel disclosure of information relating to the activities of a government agency . . . in relation to a significant historical event," and where "[a]t least one of the requested documents was not previously available to the public").

The records that Defendants produced in response to this lawsuit provided the public with new information on how much businesses owned by President Trump and his family charged American taxpayers to house government officials and agents who accompany the President when he travels.[2]  The public benefit from the records at issue was especially significant given the timing of the documents' release in advance of the 2020 elections in which President Trump unsuccessfully asked voters to return him to office.  *See Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (Court of Appeals notes in FOIA case that "victory is likely to add to the fund of information that citizens may use in making vital political choices.") (quoting *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979)).  Indeed, in perhaps the clearest sign of the records' import, then-White House spokesman Judd Deere announced, in response to a Post report on

---

[2] *See, e.g.*, David A. Fahrenthold & Josh Dawsey, *Trump's businesses charged Secret Service more than $1.1 million, including for rooms in club shuttered for pandemic*, THE WASHINGTON POST (Sept. 17, 2020), https://www.washingtonpost.com/politics/secret-service-spending-bedminster/2020/09/17/9e11e1c2-f6a0-11ea-be57-d00bb9bc632d_story.html ("The documents, including receipts and invoices from Trump's businesses, were released by the Secret Service after The Washington Post filed a public-records lawsuit.  They added $188,000 in previously unknown charges to The Post's running total of payments to Trump's properties related to the presence of Secret Service agents.").

then-President Trump's visits to properties owned by the Trump Organization that the White House was "building up a very large 'dossier' on the many false [Post reporter] David Fahrenthold and others stories as they are a disgrace to journalism and the American people."[3]  It plainly advances the recognized public interest in tracking the government's spending of taxpayer dollars and helping safeguard against fraud and abuse.  *See WP Co. LLC v. United States SBA*, 502 F. Supp. 3d 1, 23 (D.D.C. 2020) ("Numerous cases, accordingly, have recognized a public interest in determining whether the government programs dispensing taxpayer money involve fraud, waste, or abuse");[4] *see also United States v. Suarez*, 880 F.2d 626, 630 (2d Cir. 1989) ("[T]here is an obvious legitimate public interest in how taxpayers' money is being spent, particularly when the amount is large."); *News-Press v. Dep't of Homeland Sec.*, 489 F.3d 1173, 1192 (11th Cir. 2007) ("We easily conclude, as did both district courts, that the asserted interest in learning whether FEMA is a good steward of (sometimes several billions of) taxpayer dollars in the wake of natural and other disasters is one which goes to 'the core purpose of the FOIA, which is contributing significantly to public understanding of

---

[3] David A. Fahrenthold et al., *Room rentals, resort fees and furniture removal: How Trump's company charged the U.S. government more than $900,000*, THE WASHINGTON POST (Aug. 27, 2020), https://www.washingtonpost.com/politics/trump-company-secret-service-spending/2020/08/27/9331bd86-de36-11ea-8051-d5f887d73381_story.html ("Now, new federal spending documents obtained by The Post via a public-records lawsuit give more detail about how the Trump Organization charged the Secret Service — a kind of captive customer, required to follow Trump everywhere.").

[4] In emphasizing the importance of the public's role, through the transparency that FOIA provides, in stemming government abuse and waste of public funds, the Court of Appeals continued:  "For instance, in *Washington Post v. U.S. Department of Agriculture*, the court ordered the release of data pertaining to a Department of Agriculture subsidy program, emphasizing 'allegations of fraud and conflict of interest, supported by government reports and investigations, as well newspaper articles and other information' that were 'sufficient to raise nonspeculative questions' about the program's administration.  Similarly, *Multi Ag Media* noted that releasing the withheld information would enable the public to 'more easily determine whether USDA is catching cheaters and lawfully administering its subsidy and benefit programs.'"  *SBA*, 502 F. Supp. 3d at 23 (internal citations omitted).

the operations or activities of the government.'") (quoting *U.S. DOD v. FLRA*, 510 U.S. 487, 495 (1994)). The public benefit is even greater where, as here, disclosure will help shed light on allegations of waste. The public benefit is therefore clear in this case.

**Commercial Benefit & Nature of the Plaintiff's Interest:** The second and third factors, usually considered together, further support the *Post's* entitlement to fees. The *Post* is a national news organization that initiated this effort to disseminate and report on the then-President's security spending to the public. For this precise reason, D.C. Circuit law squarely holds that the second and third factors favor news media requesters, whose interests are public rather than private. *See Tax Analysts v. Dep't of Justice*, 965 F.2d 1092, 1096 (D.C. Cir. 1992) (noting that the second and third factors are "often considered together," recognizing "that news interests should not be considered commercial interests, and that a court would generally award fees if the complainant's interest in the information was journalistic," and observing that "FOIA's legislative history makes plain that Congress wanted news organizations to be treated favorably under the attorney's fee provision") (cleaned up).

**Agency Conduct:** The fourth and final factor, the agency's conduct, also counsels in favor of a fee award. This factor "considers whether the agency's opposition to disclosure 'had a reasonable basis in law,'" *Davy*, 550 F.3d at 1162, and this action has made it exceeding clear that Defendants had <u>no</u> basis for withholding the requested records in full, much less a reasonable basis. Indeed, the *Post* filed this lawsuit only after Defendants failed to make <u>any</u> determination on the merits of the *Post's* FOIA requests. *See id.* at 1163 ("Failing to explain the basis for deferring its response to [a FOIA] request until after [plaintiff] filed suit is exactly the kind of behavior the fee provision was enacted to combat."). The Defendants thus had no sound basis to withhold the responsive records, and that, along with the other factors, establishes the

*Post's* entitlement to an award of attorneys' fees and costs.

## II. PLAINTIFF'S REQUESTED FEES AND COSTS ARE REASONABLE.

The *Post* specifically asks this Court to award $91,290.60 in attorneys' fees and $741.55 in costs. To determine "reasonable" attorneys' fees, courts in this Circuit follows the "lodestar" method for determining a reasonable fee award under FOIA, where "'[t]he usual method of calculating reasonable attorney fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount.'" *WP Co. LLC v. SBA*, 514 F. Supp. 3d 267, 274 (D.D.C. 2021) (quoting *Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998)). Earlier this year, the U.S. Attorney's Office for the District of Columbia replaced the *LSI-Laffey* Matrix with the "Fitzpatrick Matrix" to "assist with determining reasonable attorney's fees for complex federal litigation in the District of Columbia." *See* Tobin Decl. Ex. A; *see also* https://www.justice.gov/usao-dc/page/file/1504361/download; *Vollmann v. Dep't of Justice*, Civil Action No. 12-0939 (FYP), 2022 U.S. Dist. LEXIS 69302, at *7 (D.D.C. Apr. 14, 2022) (calculating lodestar amount in FOIA case based on Fitzpatrick Matrix rates). Under the Fitzpatrick Matrix, hourly rates of all attorneys working on this matter, over the three years this case has been litigated, are reproduced below:[5]

---

[5] The Fitzpatrick Matrix calculates hourly rates based on years of experience practicing law. Mr. Tobin has practiced law since 1989, Mr. Mishkin has practiced law since 2014, and Ms. Tupja (who left our firm in 2021 for an in-house position) has practiced law since 2017.

9

| Name | Position | 2020 Hourly Rate | 2021 Hourly Rate | 2022 Hourly Rate |
|---|---|---|---|---|
| Charles D. Tobin | Partner | $723 | $730 | $757 |
| Maxwell S. Mishkin | Associate | $514 | $532 | $563 |
| Kristel Tupja | Associate | $471 | $489 | N/A |
| Margaret N. Strouse | Associate | N/A | N/A | $457 |
| Scott E. Bailey | Paralegal | $199 | $200 | $207 |
| Ryan R. Relyea | Paralegal | $199 | $200 | $207 |

Plaintiff will voluntarily apply the Fitzpatrick Matrix as an "effort[] to be reasonable in [this] request." *See Mattachine Soc'y of Wash. v. DOJ*, 406 F. Supp. 3d 64, 70 (D.D.C. 2019). A true and correct copy of the undersigned counsels' time entries are attached to the Declaration of Charles Tobin as Exhibit B. In applying the Fitzpatrick Matrix, Plaintiff requests a fee award to the total of $91,290.60. *See* Ex. B.

As detailed in Mr. Tobin's accompanying Declaration, the attorneys' and paralegals' hours for which Plaintiff seeks compensation were reasonably expended in litigating this matter. The work generally involved the following: (1) a pre-complaint investigation and review of the legal authority for the lawsuit and a review of the underlying facts; (2) drafting, editing, and filing a complaint; (3) reviewing the Defendants' answer; (4) drafting, editing, and filing an amended complaint; (5) reviewing the Defendants' amended answer; (6) coordinating with opposing counsel to draft, edit, review, and file several joint status reports; (7) drafting, editing, and filing a motion for leave to file amended complaint; (8) drafting, editing, and filing a reply in support of the motion for leave to file an amended complaint; (9) communicating with the opposing counsel as necessary throughout the litigation; and (10) providing Plaintiff with timely updates and taking strategic direction from the client in response. Plaintiff also seeks to recover costs in the amount of $741.55, which is limited to certain administrative expenses incurred during the course of this action. Tobin Decl. ¶¶ 14; *id.* Ex. B.

As reflected in Exhibit B, the Post's attorneys and paralegals expended a reasonable number of hours working on this case. *See WP Co. LLC*, 514 F. Supp. 3d at 277-78 (noting that "trial courts need not, and indeed should not, become green-eyeshade accountants in examining fee requests since the essential goal is to do rough justice, not to achieve auditing perfection") (cleaned up).  The reasonableness of the time expended is confirmed by the fact that the *Post* obtained the relief it sought in this lawsuit.  Where, as here, a party "has obtained excellent results, his attorney should recover a fully compensatory fee" which "[n]ormally . . . will encompass all hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).  The Supreme Court has further recognized that "in some cases of exceptional success, an enhanced award may be justified." *Id.* (emphasis added).

Given the reasonable amount of hours and resources expended, this Court should award Plaintiff its request for $91,290.60 in attorneys' fees and $741.55 in costs.

Pursuant to Local Rule 7(m), counsel for Plaintiff conferred with counsel for the State Department and DHS regarding this motion.  The Defendants oppose this motion.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion and order the State Department and DHS to jointly pay to Plaintiff $92,032.15 for Plaintiff's attorneys' fees and costs.

Dated: August 15, 2022 Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
1909 K Street NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com

*Counsel for Plaintiff*