UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WP COMPANY LLC**, <br><br> Plaintiff, <br><br> v. <br><br> **DEPARTMENT OF HOMELAND SECURITY**, *et al.*, <br><br> Defendants. | Case No. 1:20-cv-1487 (TNM) |

### MEMORANDUM OPINION

The Washington Post filed Freedom of Information Act requests with the Departments of State and Homeland Security. When the agencies were slow to deliver, the Post sued. Eventually they produced all the documents. Now, all that remains of this case is the Post's motion for attorneys' fees and costs. The Court finds that the Post qualifies for fees and deserves them. But because the Post's fees request is excessive, the Court will award the Post less than it seeks.

### I.

During Donald Trump's presidency, the Washington Post ran a series of stories about government payments to Trump-owned businesses. *See* Compl. ¶ 1, ECF No. 1. According to the Post, State and Secret Service employees had racked up large bills at Trump properties. *See, e.g., id.* ¶¶ 13–14.

To investigate this story, the Post filed dozens of FOIA requests. This case arises from 11 it lodged with DHS, the Secret Service's parent agency, and another eight it sent to State. *See id.* ¶¶ 19, 34. After neither agency produced any records, the Post sued. *Id.* ¶¶ 3–4. And the

Post later amended its Complaint to add another 15 FOIA requests. *See generally* Am. Compl., ECF No. 27.

Both agencies produced records to the Post. *See* Joint Status Report, ECF No. 28. And after two years, the Post decided it was satisfied with their responses. *See* Joint Status Report, ECF No. 38 ("[The Post] has indicated that it does not wish to challenge any withholdings or the searches."). That resolved the core of this case.

The Post then moved for attorneys' fees and costs. *See* Mot. for Fees, ECF No. 39. In the Post's view, it is both eligible for and entitled to fees. *Id.* at 2. The agencies disagree on both counts. *See* Gov't Opp'n, ECF No. 42.

The Court finds that the Post is eligible for fees and entitled to them as well. But the Court also finds that the Post's fee request is unreasonable, so the Court will reduce it. The Post's costs request is reasonable, so the Court will grant it in full.

## II.

To get fees, the Post must clear two hurdles: it must show both that it is eligible for fees and that it is entitled to them. *Jud. Watch, Inc. v. DOC*, 470 F.3d 363, 368–69 (D.C. Cir. 2006). And if it does that, the Court then asks whether its request is reasonable.

*1. Eligibility*. FOIA's statutory scheme governs eligibility for fees. The Court may award reasonable fees only if the Post "substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). And the Post has "substantially prevailed" if it has "obtained relief through either . . . (I) a judicial order . . . or (II) a voluntary or unilateral change in position by the agency." *Id.* § 552(a)(4)(E)(ii).

*2. Entitlement*. If the Post can show that it is eligible for fees, the Court next considers whether it should award them. To figure that out, the Court must look to "four factors: (1) the

public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agenc[ies'] withholding." *Jud. Watch*, 470 F.3d at 369 (cleaned up).

If the Post meets those requirements, then the Court must consider the fee itself—both the number of hours the Post's lawyers worked and how much those lawyers charged per hour. *See id.* The Court's compass here is reasonableness.

### III.

The Court finds that the Post is both eligible for fees and entitled to them. Consider each in turn.

### A.

Start with eligibility. To be eligible for fees, the Post must have "substantially prevailed" in this case. 5 U.S.C. § 552(a)(4)(E)(i). Thus, it must show that it "obtained relief through either . . . a judicial order" or "a voluntary or unilateral change in position by the agency." *Id.* § 552(a)(4)(E)(ii).

The Post says it did both. *See* Mot. for Fees at 4–5. It notes that "the State Department was ordered to make rolling productions" (judicial order). *Id.* at 5. And it urges that "DHS elected to produce records only after the lawsuit was filed" (change in position). *Id.* The Court agrees that the Post "obtained relief through . . . a judicial order." 5 U.S.C. § 552(a)(4)(E)(ii).

"Scheduling orders requiring production by a certain date may [satisfy the eligibility prong] . . . because with their entry, the plaintiff has gained a judgment that can be enforced through contempt." *Urb. Air Initiative, Inc. v. EPA*, 442 F. Supp. 3d 301, 311 (D.D.C. 2020). Thus, in *Davy v. CIA*, the D.C. Circuit found that a plaintiff had substantially prevailed because the district court had ordered documents produced by specific dates. 456 F.3d 162, 165–66

3

(D.C. Cir. 2006) ("*Davy I*").

The same happened here.  Four times, the Court ordered State to produce documents by a specific date.  *See* Order at 3, ECF No. 15 (State must "make an initial production of responsive documents by October 15, 2020."); Min. Order (Oct. 1, 2020) (State "shall make a second production on or before November 16, 2020."); Min. Order (Dec. 1, 2020) ("State shall make another production on or before December 14, 2020."); Min. Order (Jan. 4, 2021) ("State shall make another production on or before February 15, 2021.").  So the Post "substantially prevailed" by "obtain[ing] relief through . . . a judicial order."  5 U.S.C. § 552(a)(4)(E).  And it is thus eligible for fees.

**B.**

Next, consider entitlement.  To determine whether to award fees, the Court looks to "four factors: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agenc[ies'] withholding."  *Jud. Watch*, 470 F.3d at 369 (cleaned up).  Based on these, the Court finds that the Post is entitled to fees.

*1. Public benefit*.  This factor cuts in the Post's favor because the public had an interest in the information sought.  The FOIA requests related to government spending.  And in other FOIA contexts, courts "have recognized a public interest in determining whether government programs . . . involve fraud, waste, or abuse."  *WP Co. LLC v. SBA*, 502 F. Supp. 3d 1, 23 (D.D.C. 2020) (collecting cases).  That is true here too.  Such news "add[s] to the fund of information that citizens may use in making vital political choices."  *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979) (cleaned up).

Pushing back, the agencies note that they had already gotten many similar FOIA requests.

4

Thus, they argue, the Post's "lawsuit did not reveal the same magnitude of new information." Opp'n at 14. Fair enough. But that only makes this factor weigh less heavily in the Post's favor; it does not tip the balance toward the agencies.

Indeed, the D.C. Circuit found that this factor favored the plaintiff where "[a]t least one of the requested documents was not previously available to the public" and that document provided important information. *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008) ("*Davy II*"). And the agencies argue only that the Post's requests failed to get "the same *magnitude* of new information," not that they got no new information whatsoever. Opp'n at 14 (emphasis added). So this factor favors the Post.

*2 & 3. Commercial benefit & nature of interest*. Courts consider factors two and three in tandem. These factors ask "whether the plaintiff had a sufficient private incentive to pursue his FOIA request even without the prospect of obtaining attorneys' fees." *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 712 (D.C. Cir. 2014) (cleaned up). Along with the first, they "assist a court in distinguishing between requesters who seek documents for public informational purposes and those who seek documents for private advantage." *Davy II*, 550 F.3d at 1160.

Unsurprisingly, then, these factors usually favor FOIA requests from reporters. The D.C. Circuit "has long recognized that news interests, regardless of private incentive, generally should not be considered commercial interests for purposes of the second factor." *Id.* (cleaned up). And so long as the requester's interest is not "frivolous or purely commercial [in] nature," courts will "generally award fees" for news requests. *Id.* at 1160–61 (cleaned up).

In response, the agencies say that "it is possible that the information will become the subject of published books of commercial value." Opp'n at 15. True enough. But the mere chance that the documents could be used for a book does not make these requests private. Even

5

an "intention to publish a book [would] not necessarily mean that the . . . [Post's] interest is purely commercial." *Davy II*, 550 F.3d at 1160 (cleaned up).

Nor is the Court persuaded by the agencies' musing that "it appears plausible that Plaintiff was motivated in part by its or its reporters' own private interests." Opp'n at 15. These FOIA requests fit squarely with the Post's public reporting about government spending during the Trump administration. Thus, they were for a news purpose and these two factors favor the Post as well.

*4. Reasonableness of withholding*. This factor considers whether the agencies "had a reasonable basis in law" for opposing disclosure and whether they otherwise behaved unreasonably. *Davy II*, 550 F.3d at 1162 (cleaned up). The agencies say this factor is dispositive. Opp'n at 12–13. They argue that their delay in processing the Post's requests was justified. For one, most of the requests were lodged right before the start of COVID, "which upended State's processing capabilities." *Id.* at 16. More, most of the requests "required external and internal consultations." *Id.*

The Post argues that the agencies' excuses cannot excuse the agencies' delay. Reply at 6–7, ECF No. 43. And in support, the Post points to cases that have held as much. *See, e.g.*, *id.* at 7 (citing *Envtl. Def. Fund v. EPA*, 2022 WL 136792, at *6 (D.D.C. Jan. 13, 2022)).

To start, the Court finds that this factor is not dispositive. It would be so only if the agencies' reason for declining prompt production was "correct as a matter of law." *Davy II*, 550 F.3d at 1162 (cleaned up). And here, the agencies argue instead that, as a factual matter, they behaved reasonably under the circumstances.

Still, this factor is close. On one hand, the agencies offer no legal basis for failing to timely respond to the Post's requests. But on the other, the Court recognizes that the global

pandemic made a fast FOIA response unrealistic. Indeed, the agencies responded laudably during trying times.

So this factor, at most, slightly favors the agencies. And because that is not close to enough to overcome the weight of the first three, the Court finds that the Post is entitled to fees. *See, e.g.*, *WP Co. LLC v. U.S. Small Bus. Admin.*, 514 F. Supp. 3d 267, 273 (D.D.C. 2021) ("Here, the first three factors . . . tilt heavily toward Plaintiffs, more than offsetting the fourth factor and confirming the news organizations' entitlement to fees."). And thus, the Court must next consider the reasonableness of the Post's fee request.

## IV.

The Post requests $91,290.60 in attorneys' fees and $741.55 in costs. The agencies say that if the Court awards any fees, it should shave off at least 75%. Opp'n at 25. Predictably, the Post resists a haircut. Reply at 9. The Court finds that the Post's fees are unreasonable and will instead award $55,000. But the Court finds that the Post's request for costs is reasonable, so it will award those in full.

Because the Post has shown that it is both eligible and entitled to fees, the Court may impose "reasonable attorney fees" and costs. 5 U.S.C. § 552(a)(4)(E)(i). The Post bears the burden of showing that its fees and costs are reasonable. *See Urb. Air Initiative*, 442 F. Supp. 3d at 320. To meet its burden, the Post "must submit [its] fee bill to the [C]ourt." *Jud. Watch*, 470 F.3d at 369 (cleaned up). The Court then assesses "the reasonableness of (a) the number of hours expended and (b) the hourly fee claimed." *Id.* (cleaned up).

There is no real dispute here about the Post's hourly fees. To calculate those, the Post used the "Fitzpatrick Matrix" from the U.S. Attorney's Office for the District of Columbia. Mot. for Fees at 10. That method "calculates hourly rates based on years of experience practicing

law." *Id.* at 9 n.5. The agencies concede that the Fitzpatrick Matrix yields a reasonable hourly rate. Opp'n at 21. And the Court sees no reason to doubt this. So the Post has shown that its hourly fees are reasonable.

That leaves the reasonableness of the hours billed. To assess that, the Court discounts "time spent in duplicative, unorganized or otherwise unproductive effort." *Env't. Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993) (cleaned up). Thus, the Court should reduce fees for "time expended on issues on which [the Post] did not ultimately prevail." *Urb. Air Initiative*, 442 F. Supp. 3d at 320 (cleaned up). Likewise, the Court may reduce fees "if the [Post] achieved only limited success" or based on the particular "facts of [this] case." *Hall v. CIA*, 115 F. Supp. 3d 24, 27 (D.D.C. 2015); *Urb. Air Initiative*, 442 F. Supp. 3d at 321.

In determining a reasonable fee, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). That is because "[t]he essential goal . . . is to do rough justice, not to achieve auditing perfection." *Id.* So the Court "may use estimates in calculating and allocating an attorney's time." *Id.* And the "[C]ourt may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for . . . limited success." *Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983); *see also Urb. Air Initiative*, 442 F. Supp. 3d at 326 (doing same).

### A.

The agencies' arguments fall into two rough groups. First, they offer general reasons why the Post's hours are unreasonable. Second, they quibble with specific billing entries.

*General gripes*. The agencies start big. Most of the Post's legal work, they say, was unnecessary. Opp'n at 19. Indeed, aside from filing the Complaint and Amended Complaint, "very little of the other work" was called for. *Id.* They also charge that this case was overstaffed

for a "relatively straightforward FOIA case." *Id.* at 22. And the agencies claim that some partially redacted time entries lack "sufficient context and surrounding information to establish a clear nexus to this case." *Id.*

Plus, the agencies complain that the Post's lawyers failed "to allocate post-complaint work between" the agencies. *Id.* at 21. That is "improper," they claim, because the agencies "had different litigating postures." *Id.* With DHS, the Post "never sought any relief or raised an issue about [DHS's] reasonably prompt releases" except for in its Complaints. *Id.* And because the lawyers never showed which part of the case they were working on (State or DHS), the Court should "ignore or at least substantially discount the amounts requested." *Id.*

*Specific gripes*. The agencies press some more specific claims as well. For one, they argue that the lawyers took too long researching and writing the Complaint—34 hours. *See* Opp'n at 22. And they point to time the lawyers spent on requests that the Court rejected: The lawyers billed $6,961 for "reviewing and responding to the State Department's processing declaration." *Id.* at 22–23. Yet the Court sided with the State Department's scheduling request instead. *See id.* Relatedly, the agencies critique 13.4 hours spent on a motion to amend the scheduling order and preparations for a status conference, both of which got the Post nothing. *See id.* at 23.

The agencies attack the Post's motion to amend as well. They acknowledge that the Post won that motion, but they protest that it "did not alter the posture of the case." *Id.* "[A]mendment was a convenience" for the Post because it should have "fil[ed] a complaint at the outset that combined all related FOIA requests." *Id.* And the Post "should not qualify for fee shifting when the amendment did not lead to any claim on which Plaintiff substantially prevailed." *Id.* For good measure, they caution that not reducing those fees "would encourage

other [p]laintiffs to multiply FOIA litigation needlessly" and note that the lawyers charged $1,459 for correcting a mistake in the motion.  *Id.*

Finally, the agencies challenge the Post's request for "fees on fees."  That is, the fees the Post incurred by litigating this motion for attorneys' fees.  The agencies say the Court should award none, or at least reduced them "to the extent the Court is 'persuaded that most of [the Post's] fee demands are unsubstantiated or unwarranted.'"  *Id.* at 24 (quoting *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 528 (D.C. Cir. 1984)).

### B.

Turn first to the agencies' big-picture complaints.  Some are well taken.  For example, the Court agrees that the Post's fee is too steep for this "relatively straightforward FOIA case."  Opp'n at 22.  Indeed, the Post challenged no withholdings and this case never went to summary judgment.  There were no real substantive disagreements.  And beyond the pleadings, the lawyers did little briefing.  So the Post's lawyers spent too much time (168 hours) on this case.

The Court also agrees that little work was necessary for the lawyers on the DHS side of the case.  In total, this case involved 23 FOIA requests to DHS—11 in the Complaint and 12 more in the Amended Complaint.  DHS responded to the first 11 before the Post amended its Complaint.  Decl. of Kevin L. Tyrrell ¶ 14, ECF No. 42-1.  And the Post did not challenge any of those responses.  *Id.* ¶ 15.  Then, DHS responded to the second set of requests before the agencies answered the Amended Complaint.  *Id.* ¶ 25.  And the Post challenged none of those responses either.  *Id.*

More, DHS was never ordered to produce any documents and did not speed up its productions due to this case.  *Id.* ¶¶ 26, 28.  Recall too that DHS was already responding to very similar FOIA requests, diminishing whatever newsworthy value the Post's actions generated.

*See* Opp'n at 3, 8; Tyrrell Decl. ¶ 5.  So the Post has not shown that its claims against DHS got it anything more than it would have received by FOIA requests alone—neither a faster response, nor additional documents.  And thus the lawyers' work on this side of the case was "unproductive."  *Reilly*, 1 F.3d at 1258 (cleaned up).

The Court disagrees, however, that the Post's time entries fail "to establish a clear nexus to this case." Opp'n at 22.  None of the Post's redacted time entries lack enough context.  And the Post need not expose privileged information to get a fee award that it is eligible for by statute.

 Turn next to the Post's specific claims.  The Court agrees that the Post's fee award should be reduced for "time expended on issues on which [it] did not ultimately prevail." *Urb. Air Initiative*, 442 F. Supp. 3d at 321 (cleaned up).  At least some of the lawyers' work in trying to speed up State's processing was futile.  *See* Opp'n at 22–23.

But the Post's Motion to Amend is another matter.  For one, the Post won that motion.  Plus, the Court is unpersuaded by the agencies' claim that awarding fees "would encourage other Plaintiffs to multiply FOIA litigation needlessly." Opp'n at 23.  When granting the motion to amend, the Court rejected the agencies' similar claim that amendment was "prejudicial and inefficient." Order at 2, ECF No. 26.

And the Court disagrees that fees are inappropriate "when the amendment did not lead to any claim on which Plaintiff substantially prevailed." Opp'n at 23.  True, the Court should consider whether amendment was necessary and productive.  *See Reilly*, 1 F.3d at 1258.  But the agencies point to no authority requiring the Court to repeat its eligibility analysis on the Amended Complaint.

Still, the agencies are right to highlight that the lawyers charged $1,459 for fixing their own mistake in an exhibit; that is unreasonable. And the Court agrees that the lawyers spent too long on the Complaint and their motion for fees given the simplicity of this case and their familiarity with governing law.

## V.

For all these reasons, the Court concludes that the Post's request for $91,290.60 in attorneys' fees is unreasonable. This case was quite simple and involved little substantive briefing. The fees include time spent on fruitless motions and fixing the lawyers' own mistake. More, the Court is skeptical that the lawyers' advocacy gained the Post anything with respect to DHS. Thus, the Court finds that $55,000 in fees, about 60% of those requested, is reasonable.

But the Court will not accept the agencies' invitation to cut the Post's requested costs because the agencies point to no costs that were unreasonable. Indeed, the agencies say that they "do not take issue with the reasonableness of [the Post's] calculation" of its costs. Opp'n at 25. So the Court finds that $741.55 in costs is reasonable.

The Court will thus grant in part the Post's Motion for Attorneys' Fees and Costs. A separate Order will issue.

Dated: February 6, 2023                                  TREVOR N. McFADDEN, U.S.D.J.